Meriel L. Darzen, OSB # 113645
Crag Law Center
3141 E. Burnside St.
Portland, Oregon 97214
meriel@crag.org | (503) 525-2725

Nicholas S. Cady, OSB # 113463
Peter D. Jensen III, OSB # 235260
Cascadia Wildlands
P.O. Box 10455
Eugene, Oregon 97440
nick@cascwild.org | peter@cascwild.org
(541) 434-1463

John Persell (OSB # 084400)
Oregon Wild
5825 N Greeley Ave.
Portland, OR 97217
(503) 896-6472 | jp@oregonwild.org

*Attorneys for the Plaintiffs*

---

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

---

| | |
|---|---|
| **CASCADIA WILDLANDS**, an Oregon non-profit organization, **OREGON WILD**, an Oregon non-profit organization, and **UMPQUA WATERSHEDS**, an Oregon non-profit organization, | |
| Plaintiffs, | **MOTION TO COMPLETE/SUPPLEMENT THE ADMINISTRATIVE RECORD** |
| v. | |
| **UNITED STATES BUREAU OF LAND MANAGEMENT**, a federal agency, | Case No. 6:24-cv-01641-MTK |
| Defendant, and | |
| **AMERICAN FOREST RESOURCE COUNCIL** and **ASSOCIATION OF O&C COUNTIES**, | |
| Defendant-Intervenors. | |

## TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………………….……………..i

TABLE OF AUTHORITIES ……………………….……………….……..……………..…ii

MOTION ……………………………………………………………….……………1

MEMORANDUM IN SUPPORT OF MOTION ………….………………….……….…..…2

INTRODUCTION ………………………………………….……………2

LEGAL FRAMEWORK ……………………………………………………….…3

I.     National Environmental Policy Act …………………………………………..…3

II.    Federal Land Policy and Management Act ……………………………………4

III.   Administrative Procedure Act ………………………………………………4

ARGUMENT ……………………………………………………………6

I.     Exhibits 3 and 4 Are Part of the Whole Record Because BLM at Least
       Indirectly Considered Them During the Development and Authorization of the
       Blue and Gold Project and Associated Timber Sales ………….……………….....………6

II.    BLM Waived Any Claim That These Documents Are Deliberative ………….………9

III.   Alternatively, Exhibits 3 and 4 Properly Fall within *Lands Council*
       Exceptions, Warranting Their Supplementation of the Record ……………….………11

       A.     Exhibits 3 and 4 Consist of Materials Regarding Stand Ages and Habitat
              Conditions in the Project Area, Relevant Information BLM Failed to
              Disclose and Relevant Factors the Agency Failed to Consider ………….……11

       B.     Exhibits 3 and 4 Are Necessary to Explain the Technical and Complex
              Subjects of Stand Age and Habitat Determinations ……………….………14

CONCLUSION …………………….……………………………….………15

# TABLE OF AUTHORITIES

**Cases**

*350 Mont. v. Haaland*,
   50 F.4th 1254 (9th Cir. 2022) …….………….……….…….….……….………4

*Animal Def. Council v. Hodel*,
   840 F.2d 1432 (9th Cir. 1988) ……………….....……………....………………………6, 11, 12

*Asarco v. U.S. Envtl. Protection Agency*,
   616 F.2d 1153 (9th Cir. 1980) …..…………………………………......….……………6, 11

*Blue Mts. Biodiversity Project v. Jeffries*,
   99 F.4th 438 (9th Cir. 2024) …………………….....……………………....…….….…..…9

*Cahill Ranches, Inc. v. BLM*,
   No. 1:21-cv-01363-CL, 2023 U.S. Dist. LEXIS 115780 (D. Or. July 6, 2023) ………….…13

*Camp v. Pitts*,
   411 U.S. 138 (1973) …………………...…………………….…................……………5

*Ctr. for Biological Diversity v. Zinke*,
   No. 3:18-cv-00064-SLG, 2018 U.S. Dist. LEXIS 199287 (D. Alaska Nov. 15, 2018) ….……10

*Ctr. for Native Ecosystems v. Salazar*,
   711 F. Supp. 2d 1267 (D. Colo. 2010) …….…………………………………….…….……5, 8

*Citizens to Pres. Overton Park v. Volpe*,
   401 U.S. 402 (1971) …………………….………………………….……………14

*Cty. of San Miguel v. Kempthorne*,
   587 F. Supp. 2d 64 (D.D.C. 2008) ……………………………………….……....…8–9, 10

*Dep't of Transp. v. Pub. Citizen*,
   541 U.S. 752 (2004) …..……….………………………………………………………3

*Earth Island Inst. v. Hogarth*,
   494 F.3d 757 (9th Cir. 2007) ……………………………………….……………………14

*Georgia ForestWatch v. U.S. Forest Serv.*,
   No. 2:19-cv-77-RWS, 2020 U.S. Dist. LEXIS 268162 (N.D. Ga. Apr. 22, 2020) ……….…..10

*Goffney v. Becerra*,
   995 F.3d 737 (9th Cir. 2021) ……………………….………….….…………………………5, 7

*Home Box Off., Inc. v. Fed. Commc'ns Comm'n,*
   567 F.2d 9 (D.C. Cir. 1977) …………………………………………………………….………5

*Lands Council v. Powell,*
   395 F.3d 1019 (9th Cir. 2004) ……………………………….……………...3, 6, 11, 14, 16

*Mead Data Ctr., Inc. v. U.S. Dep't of Air Force,*
   566 F.2d 242 (D.C. Cir. 1977) ……………………………….…………….………10

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) …………………………………………………….…....……5, 15

*Native Vill. of Point Hope v. Jewell,*
   740 F.3d 489 (9th Cir. 2014) ……………………………………….………………14

*Nw. Envtl. Advocates v. Nat'l Marine Fisheries Serv.,*
   No. 3:21-cv-01591-AB, 2025 U.S. Dist. LEXIS 25238 (D. Or. Feb. 11, 2025) ………3, 12, 13

*Pac. Choice Seafood Co. v. Ross,*
   976 F.3d 932 (9th Cir. 2020) …………………………………………………………14

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Nat'l Marine Fisheries Serv.,*
   265 F.3d 1028 (9th Cir. 2001) …………………………………….………………5, 15

*Portland Audubon Soc'y v. Endangered Species Comm.,*
   984 F.2d 1534 (9th Cir. 1993) …………………………….…………….……………5, 8

*Robertson v. Methow Valley Citizens Council,*
   490 U.S. 332 (1989) ……………………………………………….…………….……4

*San Luis & Delta-Mendota Water Auth. v. Locke,*
   776 F.3d 971 (9th Cir. 2014) …………………………………………...…………11, 13

*Silverton Mt. Guides LLC v. U.S. Forest Serv.,*
   No. 3:22-cv-00048-JMK, 2023 U.S. Dist. LEXIS 70401 (D. Alaska Apr. 21, 2023) …………10

*Stop B2H Coalition v. BLM,*
   552 F. Supp. 3d 1101 (D. Or. 2021) …………………………………….…………14–15

*Thompson v. U.S. Dep't of Labor,*
   885 F.2d 551 (9th Cir. 1989) ………………………………………...……………5, 8

*UnitedHealthcare Ins. Co. v. Azar,*
   316 F. Supp. 3d 339 (D.D.C. 2018) …………………………………………………10

*Xerces Soc'y for Invertebrates Conservation v. Shea*,
 682 F. Supp. 3d 948 (D. Or. 2023) ……………………………………….…………………8, 9

**Statutes**

5 U.S.C. § 701 *et seq.* …………………………………………….…………………………4

5 U.S.C. § 706 …………………………………………………………………………5, 8

5 U.S.C. § 706(2)(A) …………………………………………………………………...4–5

42 U.S.C. §§ 4321–4370j …………………………………………….…………………2

42 U.S.C. § 4332(2)(D) …………………………………………….…………….………4

43 U.S.C. § 302 *et seq.* ……………………………………………………….……………2

43 U.S.C. § 1712 ……………………………………………………….……….………4

43 U.S.C. § 1732(a) ……………………………………………….…………….………4

**Regulations**

43 C.F.R. § 1610.5-3(a) ……………………………………………….………….………4

**Other Authorities**

Local Rule 56-1(b) ……………………………………………………………….…………3

**MOTION**

Plaintiffs Cascadia Wildlands, Oregon Wild, and Umpqua Watersheds (collectively, "Plaintiffs") respectfully move this Court to compel completion of the administrative record for this case with the documents included in Exhibits 3 and 4 to the Declaration of Peter Jensen, ECF25, which consist of marbled murrelet and northern spotted owl technical data (including survey results, data, and habitat evaluation), information, and correspondence obtained by Plaintiffs from Federal Defendant the Bureau of Land Management ("BLM") through Freedom of Information Act ("FOIA") requests. These materials were before the agency and directly or indirectly considered before BLM reached the challenged decisions authorizing the Blue and Gold Harvest Plan ("Project") and associated timber sales. Thus, they are part of "the whole record" and Plaintiffs respectfully request that the Court order the record to be completed with these documents.

In the alternative, Plaintiffs respectfully move to supplement the administrative record with Exhibits 3 (filed at ECF25-3) and 4 (filed at ECF25-4) because they are necessary for the Court to determine whether BLM considered all relevant facts, to explain technical and complex subject matter, and as evidence that the agency withheld pertinent information from the public and excluded such information from the record in bad faith.

Pursuant to Local Rule 7-1(a), the undersigned certifies that the Parties made a good faith effort to fully resolve the dispute regarding materials that should be in the administrative record or otherwise considered by the Court for this case. Although the Parties were able to resolve a number of record-related concerns without judicial intervention, the Parties were unable to come to full resolution regarding the materials in Exhibits 3 and 4, as discussed in the supporting memorandum below.

## MEMORANDUM IN SUPPORT OF MOTION

## INTRODUCTION

In the present case, Plaintiffs challenge the authorization of the Blue and Gold Harvest Plan ("Project") and associated timber sales by Federal Defendant BLM. Plaintiffs allege that BLM violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370j, by failing to take a "hard look" at the Project's impacts on a number of environmental values, including mature and old-growth forests that provide northern spotted owl ("NSO") and marbled murrelet habitat and vast amounts of stored carbon, and by failing to prepare an environmental impact statement ("EIS") for the Project. *See* Am. Compl. ¶¶ 195–245 (ECF7); *see also* Plaintiffs' Motion for Summary Judgment ("MSJ"). Plaintiffs further allege that BLM violated the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. § 302 *et seq.*, by failing to conform the Project to management direction contained in the Northwestern and Coastal Oregon Resource Management Plan ("RMP"). *See* Am. Compl. ¶¶ 176–186; *see also* MSJ.

Plaintiffs respectfully request that the Court compel BLM to complete and/or supplement the record with the materials attached to the Declaration of Peter Jensen as Exhibits 3 and 4 (ECF25-3 & ECF25-4). The administrative record lodged by Federal Defendant on February 12, 2025 (ECF19) does not contain these materials. As described below, Exhibits 3 and 4 consist of materials considered directly or indirectly by agency decision-makers in the process of analyzing and authorizing the challenged Project, warranting their inclusion in the administrative record. Further, these documents were provided to Plaintiffs in response to FOIA requests relating to both the Blue and Gold project and the species present in the Project Area that are listed under the Endangered Species Act ("ESA"). *See* Jensen Decl., Exhibits 1 and 2 (FOIA requests, ECF25-1 & ECF 25-2). Thus, by voluntarily providing them in response to these requests, BLM waived any

privilege as to these documents, and they should be properly considered part of the administrative record.

In the alternative, consideration of these materials is necessary for the Court to determine whether BLM took the requisite "hard look" at impacts under NEPA, considered all relevant factors, articulated rational connections between the facts found and the decisions made, or otherwise acted arbitrarily or capriciously in authorizing the Blue and Gold Harvest Plan and associated timber sales. Thus, the record should be supplemented with these documents pursuant to *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). Finally, such evidence can properly be considered by this Court and analyzed contemporaneously with their summary judgment briefing. *See Nw. Envtl. Advocates v. Nat'l Marine Fisheries Serv.*, No. 3:21-cv-01591-AB, 2025 U.S. Dist. LEXIS 25238, at *12–13 (D. Or. Feb. 11, 2025) ("[federal agency defendant's] record is 57,000 pages long. The Court cannot determine whether Plaintiff's extra-record evidence is necessary to evaluate [defendant's] decision without the full context of the parties' arguments on summary judgment."); *see also* Local Rule 56-1(b) (instructing parties to file evidentiary objections at summary judgment in their response or reply memoranda).

## LEGAL FRAMEWORK

### I.    National Environmental Policy Act

NEPA requires federal agencies to carefully consider detailed information concerning the environmental impacts of proposed actions, and that relevant information be made available to the public so that it may play a role in both the decision-making process and decisions' implementation. *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 768 (2004). To achieve these twin aims, NEPA and its implementing regulations set forth "action-forcing" procedures designed to (1) ensure the agency takes the requisite "hard look" at the environmental consequences of the

proposed action, and (2) foster meaningful public participation. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349–51 (1989). Throughout the NEPA process, an agency must "ensure the professional integrity, including scientific integrity, of the discussion and analysis in an environmental document." 42 U.S.C. § 4332(2)(D). A "hard look" requires a thorough, full, and fair discussion of a proposed action's environmental impacts. *350 Mont. v. Haaland*, 50 F.4th 1254, 1265 (9th Cir. 2022).[1] The information must be of high quality and sufficient to allow the public to question the agency's rationale and understand the agency's decision-making process. *Robertson*, 490 U.S. at 349.

## II. Federal Land Policy and Management Act

FLPMA requires BLM to develop resource management plans that govern the use of land that the agency administers. 43 U.S.C. § 1712. Once an RMP has been developed, BLM must manage its lands in compliance with the plan and ensure that any site-specific projects conform to the RMP. *Id.* § 1732(a); 43 C.F.R. § 1610.5-3(a). The Northwestern and Coastal Oregon RMP ("RMP") governs management of lands within the Blue and Gold Harvest Plan. *See* AR311. Relevant here, the RMP requires retention of "all trees that are both ≥ 40" DBH [diameter at breast height] and that the BLM identifies were established prior to 1850," subject to certain safety and operational exceptions. AR7876. BLM must ensure that site-specific projects conform to this management direction. 43 U.S.C. § 1732(a); 43 C.F.R. § 1610.5-3(a).

## III. Administrative Procedure Act

Plaintiffs' NEPA and FLPMA claims in this case are brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* Under the APA, the Court must determine whether BLM's Blue and Gold Harvest Plan decision was "arbitrary, capricious, an

---

[1] Cases have been cleaned up, with internal citations omitted, unless otherwise noted.

abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious where the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). As such, the Court must decide whether the agency "considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Pac. Coast Fed'n of Fishermen's Ass'ns v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001).

Judicial review under the APA must be based on the "whole record." 5 U.S.C. § 706. The "whole record" consists of "everything that was before the agency pertaining to the merits of its decision." *Goffney v. Becerra,* 995 F.3d 737, 747 (9th Cir. 2021) (citing *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993)). This includes "all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis in original). The "whole record [] includes documents besides those which 'literally pass[ed] before the eyes of the final agency decisionmakers[s].'" *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1275 (D. Colo. 2010). An incomplete record presents "a fictional account of the actual decision-making process[.]" *Home Box Off., Inc. v. Fed. Commc'ns Comm'n*, 567 F.2d 9, 54 (D.C. Cir. 1977); *see also Portland Audubon Soc'y*, 984 F.2d at 1548 ("If the record is not complete, then the requirement that the agency decision be supported by 'the record' becomes almost meaningless.").

In general, judicial review under the APA is limited to the administrative record before the agency at the time it made its decision. *See Camp v. Pitts*, 411 U.S. 138, 141–42 (1973). The Ninth

Circuit recognizes certain exceptions to this "record review rule," however, because "[i]t will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not." *Asarco v. Envtl. Protection Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980). This is particularly true in NEPA cases, where evidence may be necessary to show an agency's environmental analysis "failed to mention a serious environmental consequence … or otherwise swept stubborn problems or serious criticism under the rug." *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1437 (9th Cir. 1988).

Thus, to properly evaluate agency decision-making under the APA, a reviewing court may go outside the record (1) if necessary to determine whether the agency has considered all relevant factors and has explained its decision; (2) if the agency has relied on documents not in the record; (3) when supplementing the record is necessary to explain technical terms or complex subject matters; or (4) when plaintiffs make a showing of agency bad faith. *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). These exceptions operate to "identify and plug holes in the administrative record." *Id.*

## ARGUMENT

I.    **Exhibits 3 and 4 Are Part of the Whole Record Because BLM at Least Indirectly Considered Them During the Development and Authorization of the Blue and Gold Project and Associated Timber Sales.**

Exhibit 3 is a BLM-generated spreadsheet[2] that Plaintiffs received in response to a FOIA request for information regarding the Blue and Gold Project, but that BLM did not include in the administrative record lodged by the agency (ECF19). The spreadsheet displays wildlife habitat

---

[2] As explained in Mr. Jensen's declaration, the original Microsoft Excel spreadsheet was converted to PDF and that PDF is Exhibit 3. *See* ECF25.

layers for marbled murrelets, including stand ages for timber units within the Blue and Gold Project

Area. This document provides information regarding stand ages and wildlife habitat conditions in

the Blue and Gold Project Area. Exhibit 4 is a document Plaintiffs obtained in response to a FOIA

request for information related to the Blue and Gold Project, but that BLM did not include in the

lodged record. *See* ECF25-4; *see also* ECF19. This document includes, among other things, emails

between BLM Biological Science Technician Erich Reeder, Lead Biologist Elizabeth Gayner, and

other BLM wildlife staff discussing and describing habitat conditions and stand ages within the

Project Area. *See*, *e.g.*, ECF25-4, pp. 78–79. These email exchanges occurred during and

immediately after Mr. Reeder's field verification of on-the-ground conditions in the Blue and Gold

Project Area on behalf of BLM. *See id.* BLM produced these materials to Plaintiffs in response to

FOIA requests seeking documents relating to the protected species, NSO, and marbled murrelets,

which reside in the Project Area *See* ECF25-1 & ECF25-2 (FOIA requests for documents relating

to NSO and murrelets in the Blue and Gold Project Area). These documents' disclosure through

FOIA and absence from the record lodged by BLM constitutes clear evidence that the current

record does not warrant a presumption of regularity. *See Goffney*, 995 F.3d at 748 (9th Cir. 2021).

BLM was required to and did—to a limited extent—analyze the status of murrelet and NSO

occupancy and habitat within the Project Area as part of the NEPA process and required ESA

consultation for the Blue and Gold Project. *See* AR372, 391; AR998, 1027. Plaintiffs' FOIA

requests went directly to these obligations. *See* ECF25-1 & ECF25-2. Thus, the materials'

inclusion among records responsive to Plaintiffs' FOIA requests shows that the agency possessed

and was aware of them, directly or indirectly considered all of them *during* the development and

analysis of the Blue and Gold Project, and otherwise identified and provided them as related to

this Project. *See Thompson*, 885 F.2d at 555 (whole record includes all materials directly or indirectly considered by decision-makers, including contrary evidence).

Exhibits 3 and 4 directly pertain to the merits of the Project—namely, the agency's disclosure and analysis of impacts to mature and old-growth forest stands and NSO and murrelet habitat in the EA, its finding of no significant impacts to any of these values, its determination that the Project conforms to RMP direction, and its associated timber sale authorizations. *See* AR344; *see also* AR311; *see also Portland Audubon Soc'y*, 984 F.2d at 1548 (unless record is complete, requirement that agency decision be supported by record is meaningless). Even though they constitute evidence contrary to the agency's positions that stand ages in the Project Area only range from 40 to 140 years old and that only 110 acres of suitable NSO habitat will be removed, *see* AR355 & AR1003, and even if they did not "literally pass before the eyes of the final agency decisionmaker[s]," Exhibits 3 and 4 are properly part of "the whole record" that must be considered by the Court in this case. 5 U.S.C. § 706; *see also Thompson*, 885 F.2d at 555; *see also Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1275.

Although the agency may be entitled to a presumption that its record is complete, a plaintiff can overcome that presumption by identifying (1) "reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record," and (2) "the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents that are likely to exist." *Xerces Soc'y for Invertebrates Conservation v. Shea,* 682 F. Supp. 3d 948, 956–57 (D. Or. 2023). Plaintiffs have met their burden to show by clear evidence that the record lodged by BLM does not warrant a presumption of regularity. Exhibits 3 and 4 are specific documents that were before the agency—and indeed, were agency-generated—and pertain to the merits of the challenged actions. *Cty. of San Miguel v.*

*Kempthorne*, 587 F. Supp. 2d 64, 76–77 (D.D.C. 2008) ("On the question of whether the Service knew about the documents, it is axiomatic that documents created by an agency itself or otherwise located in its files were before it."); *Cf. Xerces Soc'y* at 955 n.1 (denying motion to complete where plaintiffs had not identified specific documents). Because they were at least indirectly considered by BLM before authorizing the Blue and Gold Project and associated timber sales, Exhibits 3 and 4 are part of "the whole record" for this case. Accordingly, Plaintiffs' respectfully request that the Court compel BLM to complete the record with them.

## II.    BLM Waived Any Claim That These Documents Are Deliberative.

Ninth Circuit precedent does not give BLM unfettered discretion to assert the deliberative privilege over any documents it wishes, particularly when those documents represent key factual information and information that has already been disclosed to the public via the FOIA process. BLM disclosed Exhibits 3 and 4 to Plaintiffs through the FOIA process, they are part of the record considered by the agency in making its decision, and they do not qualify as deliberative. *See* ECF25-1 & ECF25-2 (FOIA requests). During the record conferral process, Plaintiffs requested inclusion of Exhibit 4, and agency counsel responded that the documents were deliberative and "not necessary for judicial review of the claims."

In *Blue Mts. Biodiversity Project v. Jeffries*, the Ninth Circuit noted that the deliberative privilege "does not apply, however, to any factual information upon which the agency has relied." 99 F.4th 438, 445 n.4 (9th Cir. 2024). Here, both the FOIA-disclosed NSO data and survey results including above-and-below-referenced email threads (Exhibit 4) and murrelet stand information (Exhibit 3) contain primarily factual information upon which the agency relied in making the Project decision. The emails contain information about specific forest and habitat conditions in the proposed timber sale units (ECF25-4, pp. 78–79) and the murrelet spreadsheet contains specific

murrelet habitat conditions and occupancy within the project area, which were considered in BLM's decision. *See generally* AR344 (EA); AR311 (FONSI). Thus, they are not properly excluded.

Further, the deliberative process privilege is limited such that it does not apply to information disclosed to an outside entity where an agency has "no control over further disclosure." *Mead Data Ctr., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 257–58 (D.C. Cir. 1977). Accordingly, many courts have found that documents or information shared outside an agency may not be withheld as deliberative. *See, e.g., Silverton Mt. Guides LLC v. U.S. Forest Serv.*, No. 3:22-cv-00048-JMK, 2023 U.S. Dist. LEXIS 70401, at *10 (D. Alaska Apr. 21, 2023) (finding deliberative privilege waived for portions of a document that were disclosed); *UnitedHealthcare Ins. Co. v. Azar*, 316 F. Supp. 3d 339, 349 (D.D.C. 2018) (explaining that "a document that was privileged as part of the deliberative process can lose its privilege when revealed outside the agency"); *San Miguel*, 587 F. Supp. 2d at 75 (noting that "by producing these documents pursuant to the FOIA request, the [agency] has waived any privilege and protection from disclosure"); *Ctr. for Biological Diversity v. Zinke,* No. 3:18-cv-00064-SLG, 2018 U.S. Dist. LEXIS 199287, at *8 (D. Alaska Nov. 15, 2018) ("When an agency … shares the agency's documents with others outside the agency, including other governmental agencies, the deliberative process privilege does not apply."). Thus, "disclosure under FOIA waives the deliberative process privilege as to the document's inclusion in the record for judicial review under the APA." *Georgia ForestWatch v. U.S. Forest Serv.*, No. 2:19-cv-77-RWS, 2020 U.S. Dist. LEXIS 268162, at *10 (N.D. Ga. Apr. 22, 2020). Here, by disclosing these documents in response to Plaintiffs' FOIA requests, with no redactions or claimed privileges, BLM waived any claim that the information is deliberative. Accordingly, Exhibits 3 and 4 should be included in the administrative record.

**III.    Alternatively, Exhibits 3 and 4 Properly Fall within *Lands Council* Exceptions, Warranting Their Supplementation of the Record.**

In the alternative to the Court compelling completion of the record with Exhibits 3 and 4, the Exhibits also properly fall within exceptions to the record review rule that allows "the court to determine whether the agency took into consideration all relevant factors" by "look[ing] outside the record to determine what matters the agency should have considered but did not." *Asarco*, 616 F.2d at 1160. Further, Exhibits 3 and 4 show that BLM failed to disclose "serious environmental consequence[s] … or otherwise swept stubborn problems or serious criticism under the rug." *Animal Def. Council*, 840 F.3d at 1437. Exhibits 3 and 4 are also necessary to explain the technical and complex subjects of stand age and habitat determinations in the Project Area. *See Lands Council*, 395 F.3d at 1030.

**A.    Exhibits 3 and 4 Consist of Materials Regarding Stand Ages and Habitat Conditions in the Project Area, Relevant Information BLM Failed to Disclose and Relevant Factors the Agency Failed to Consider.**

Under *Lands Council*, a reviewing court may go outside the record if necessary to determine whether the agency has considered all relevant factors and adequately explained its decision. 395 F.3d at 1030. Here, the two main sources of information with which Plaintiffs seek to supplement the record provide important context for determining what BLM considered and whether it adequately explained the relevant facts underlying its decision. *See San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014) ("the relevant factors … exception permits a district court to consider extra-record evidence to develop a background against which it can evaluate the integrity of the agency's analysis").

Exhibit 3 contains survey information for marbled murrelets, and includes stand ages for timber units within the Blue and Gold Project Area. Cross-referencing these materials with the EA reveals that BLM did not provide accurate stand age and habitat information to the public or

consider accurate information in its analysis. For example, while the EA describes stand ages in many sub-units and watersheds to be between 40 and 140 years, the spreadsheet reveals that stand ages in sub-units/polygons in many of these same areas have been identified as 239 years. *Compare* ECF25-3 (polygons/sub-units in Yellow Creek, Brush Creek, Bear Creek, Brad's Creek identified as 239 as "Stand Age 1") with AR527. Instead of acknowledging this relevant information during the NEPA process for the Blue and Gold Project, BLM swept this contrary data "under the rug," and thereby failed to consider or reveal the Project's actual environmental consequences. *See Animal Def. Council*, 840 F.2d at 1437; *see Nw. Envtl. Advocates*, 2025 U.S. Dist. LEXIS 25238, at *16 (observing that extra-record evidence is appropriate for consideration where the court "cannot adequately review the agency's decision on the administrative record alone").

Exhibit 4, meanwhile, contains information, survey results, and intra-agency email communications regarding stand age and habitat classifications in the Blue and Gold Project Area that are not in the record lodged by BLM. For example, in Exhibit 4, BLM Biological Science Technician Erich Reeder emailed Lead Biologist Elizabeth Gayner regarding his field observations that stand ages and NSO habitat determinations in the agency's databases were not accurate. Mr. Reeder stated:

> And it would make sense that when allocating HLB, and then creating timber sale plans, we'd want to focus on Dispersal and stay away from NRF/RA32, but since that layer is equally unreliable because it is also based on an unreliable FOI … my oh my, what a mess!

ECF25-4, p. 78.

In response, Ms. Gayner replied:

> Back in the day, its starting base is the FOI layer using stand age as the general determination for habitat type (0-39 capable, 40-69 dispersal-only, 80+ NRF). **Unfortunately, many of these stands are not aged correctly because they are based on the younger cohort if they were logged at all.** Remnant trees were not considered for the stand age.

ECF25-4, p. 78 (emphasis added).

Mr. Reeder wrote to Ms. Gayner and others that his visit to a portion of the Project Area revealed the BLM Roseburg District's habitat determinations were incorrect. ECF25-4, p. 79. Rather than offering "dispersal-only" NSO habitat, Mr. Reeder observed nesting-roosting-foraging ("NRF" or "suitable") NSO habitat and high-quality Recovery Action 32 ("RA32") NSO habitat. ECF25-4, p. 79. Ms. Gayner responded that she would make necessary changes to the habitat layer, acknowledging that "No doubt there are many stands misclassified[.]" *Id.* at 78. Upon information and belief, such changes to the layer were never made, but Exhibit 4 shows that BLM staff knew the habitat layer data relied on for the Project was not accurate. Similar issues and internal discussions related to wildlife impacts and habitat classification are further evident within Exhibit 2. *See*, *e.g.*, ECF25-4, p. 84 ("[i]n addition, Upper Yellow, Yellow Butte, and Doe Creek are almost entire sections of high quality NSO NRF and RA-32 habitat which will certainly get the attention of those scrutinizing this EA project").

Collectively, Exhibits 3 and 4 are necessary for the Court to determine whether BLM properly considered actual stand and tree ages and habitat conditions within the Project Area—highly relevant factors to the agency's analysis and determination of RMP conformance—or whether the agency withheld pertinent information from the public, ignored important concerns about on-the-ground conditions, and ultimately failed to adequately explain its decision to authorize the Blue and Gold Project. *See Nw. Envtl. Advocates*, 2025 U.S. Dist. LEXIS 25238, at *16 (D. Or. Feb. 11, 2025); *Cahill Ranches, Inc. v. BLM,* No. 1:21-cv-01363-CL, 2023 U.S. Dist. LEXIS 115780, at *4 (D. Or. July 6, 2023) (courts may admit evidence under the first exception when it would "help the court understand whether the agency complied with the APA"); *Locke*, 776 F.3d at 993.

The Ninth Circuit considers documents from throughout an agency's decision-making process, including internal ones, when reviewing an agency's final decision under the APA. *See Pac. Choice Seafood Co. v. Ross*, 976 F.3d 932, 936 & 942 (9th Cir. 2020) (rejecting argument that the court should ignore early materials considered by the agency and "examine only" the final decision); *see also*, *e.g.*, *Native Vill. of Point Hope v. Jewell*, 740 F.3d 489, 499–502 (9th Cir. 2014) (relying on "internal [agency] emails" and "draft scenario[s]" regarding an inaccurate estimate of anticipated oil production within an EIS to find a violation of NEPA); *Earth Island Inst. v. Hogarth*, 494 F.3d 757, 768–69 (9th Cir. 2007) (citing agency "internal memoranda" to determine an agency's finding was arbitrary under the APA). Here, the data that Plaintiffs seek to include consists of important information from the "thorough, probing, in-depth review" of agency action that is required in APA cases like this. *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 415 & 419 (1971). Because BLM has declined to include these materials and this information is otherwise unavailable, Plaintiffs respectfully request that the Court supplement the record with Exhibits 3 and 4 to "plug [the] holes" identified by Plaintiffs. *See Lands Council*, 395 F.3d at 1030.

**B.     Exhibits 3 and 4 Are Necessary to Explain the Technical and Complex Subjects of Stand Age and Habitat Determinations.**

Exhibits 3 and 4 are also necessary to aid the Court because they help explain complex technical matters regarding stand age and habitat determinations in the Project Area, warranting supplementation under the third *Lands Council* exception. 395 F.3d at 1095. A central issue in this case is whether BLM accurately disclosed and analyzed how the Blue and Gold Project will impact older forest stands, which often provide suitable habitat for ESA-listed species, including NRF and RA32 habitat for NSO and nesting habitat for murrelets. *See* Am. Compl. ¶¶ 114, 124, 128, 129, 206, 213, 217, 225; *see also* MSJ; *Stop B2H Coalition v. BLM*, 552 F. Supp. 3d 1101, 1120–21

(D. Or. 2021) (allowing materials that would explain technical information where it didn't "attack the wisdom or decisionmaking of the agency").

Exhibits 3 and 4 provide key information and context regarding BLM's presentation of stand age data and habitat impacts in the Blue and Gold EA and other Project documents, and whether the agency's analysis and conclusions can be reconciled with on-the-ground field verifications of stand ages and habitat conditions. Because the information in Exhibits 3 and 4 is not found elsewhere in the record, supplementation is necessary to ensure the Court is fully informed about the interplay between stand age data and NRF and RA32 habitat determinations for NSO and nesting habitat for murrelets.

## CONCLUSION

Exhibits 3 and 4 are agency-produced materials that are properly part of the whole record that must be available for judicial review under the APA. They consist of relevant factual information that BLM considered and relied on in making its decision regarding the Blue and Gold Project. Further, BLM waived any deliberative privilege that might have applied to these documents by providing them in response to targeted FOIA requests. In the alternative, supplementation of the record with Exhibits 3 and 4 is necessary to aid the Court in determining whether BLM considered all relevant factors it should have disclosed and addressed in its analysis of the Blue and Gold Project's impacts on mature and old-growth trees and stands and species habitat, and whether by failing to consider them, the agency ignored important aspects of the problem before it, ran afoul of its "hard look" obligation under NEPA, and failed to ensure the Project conformed with RMP management direction. *See State Farm*, 463 U.S. at 43; *see also Pac. Coast Fed'n of Fishermen's Ass'ns*, 265 F.3d at 1034. Alternatively, supplementation with

Exhibits 3 and 4 is warranted under the third *Lands Council* exception to explain complex technical matters. *Lands Council*, 395 F.3d at 1030.

For all of the foregoing reasons, Plaintiffs respectfully request that the Court order Federal Defendants to complete the administrative record with Exhibits 3 and 4 (ECF25-3 & ECF25-4). If the Court declines to compel completion of the record with any of these documents, Plaintiffs respectfully request that the Court supplement the record with those exhibits.

Respectfully submitted this 18th day of April, 2025.

*/s/ John S. Persell*
John S. Persell (he/him)
Oregon Wild
5825 N Greeley Ave
Portland, OR 97217
(503) 896-6472
jp@oregonwild.org

Meriel Darzen (she/her)
Crag Law Center
3141 E Burnside St
Portland, OR 97214
(503) 525-2725
meriel@crag.org

Nicholas S. Cady (he/him)
Peter D. Jensen (he/him)
Cascadia Wildlands
P.O. Box 10455
Eugene, OR 97440
(541) 434-1463
nick@cascwild.org
peter@cascwild.org

*Attorneys for the Plaintiffs*