**SCOTT E. BRADFORD, OSB #062824**
United States Attorney
District of Oregon
**SEAN E. MARTIN, OSB #054338**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204
sean.martin@usdoj.gov
Telephone: (503) 727-1000
        Attorneys for Defendant

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **CASCADIA WILDLANDS; OREGON WILD; UMPQUA WATERSHEDS,**<br><br>        Plaintiffs,<br><br>v.<br><br>**U.S. BUREAU OF LAND MANAGEMENT**,<br><br>        Defendant,<br><br>and<br><br>**AMERICAN FOREST RESOURCE COUNCIL** and **ASSOCIATION OF O&C COUNTIES**,<br><br>        Defendant-Intervenors. | Case No. 6:24-cv-01641-MTK<br><br>**DECLARATION OF ABRAHAM WHEELER IN SUPPORT OF DEFENDANT'S RESPONSE TO PLAINTIFFS' SECOND MOTION TO SUPPLEMENT THE RECORD** |

Page 1      Declaration of Abraham Wheeler

I, Abraham Wheeler, declare and state as follows:

1.     I am the State Lead Planning Forester with the U.S. Bureau of Land Management ("BLM") State Office for Oregon and Washington ("OR/WA"). I have served in this position since May 2023. Prior to that, I was the State Lead O&C Forester since April 2015. I hold a Bachelor of Science degree in Forest Management (earned in 2007), from Oregon State University in Corvallis, Oregon.

2.     As the State Lead Planning Forester, I am the primary point of contact on forest modeling for large scale BLM projects in western Oregon, and I provide technical forestry expertise, review, and assistance to BLM districts in western Oregon as they perform project planning, forest modeling, and implementation. I have professional expertise with the methodologies and procedures used in forest inventory undertakings and forest/stand growth and yield assessments. I am familiar with the BLM EcoSurvey program that is used to compile tactical plot-based inventory data from stand exams and produce preliminary summary metrics.  I am also familiar with the FVS-ORGANON Southwest (OC) variant (Smith-Mateja 2015) model that BLM used in the Blue and Gold project for forest growth and yield modeling and to produce BLM's best quantitative estimates of current and future forest conditions to inform effects analysis and support decision making.

Page 2     Declaration of Abraham Wheeler

3.    I am knowledgeable about the Plaintiffs' motion currently before the Court to supplement the record with the February 6, 2026 declaration of Mr. Greg Blomstrom (ECF 50-1), who attests that his efforts to replicate the Blue and Gold plot data and harvest and growth outputs were unsuccessful. I understand that Plaintiffs allege that the Blomstrom Declaration is new "evidence" that allegedly shows that forest data BLM relied on for the Blue and Gold Harvest Plan is invalid.

4.    After reviewing Mr. Blomstrom's Declaration (ECF-50-1) and cross-referencing his inputs, methodologies, and outputs with those used by the BLM Roseburg District for Blue and Gold, I have concluded that Mr. Blomstrom's analysis is fatally flawed. I identified the following serious problems with his declaration.

5.    First, Mr. Blomstrom started his whole analysis using the wrong tree plot data before running the FVS-ORGANON model, which therefore produced results that do not match those provided by BLM in Appendix I of the Blue and Gold Environmental Assessment (EA) at AR_00527-28. According to paragraph 9 of his declaration, Mr. Blomstrom based his analysis on the Merchantable Tree Plot Summaries generated by BLM. He says he based his analysis on the Merchantable Tree Summary – T06 (AR_04713-AR_04898) – and the Merchantable Tree Plot Summary – T07 (AR_04444-AR_04172).

Page 3     Declaration of Abraham Wheeler

6.     This approach was incorrect and skewed Mr. Blomstrom's entire analysis. That is because the input data used to produce estimates in Appendix I of the EA was not based on plot data from merchantable trees alone, but instead on a much larger dataset of trees of all sizes, including smaller non-merchantable trees.  Merchantable tree summaries exclude trees less than 7 inches in diameter, and these smaller non-merchantable trees contribute to and affect important stand-level metrics including basal area, stand density index (SDI), and canopy cover that are reflected in Appendix I. Plus, as I discuss in more detail below, growing trees to a common year of 2021 allows some of those smaller trees (including those less than 4.5 feet in height[1]) to graduate into larger size classes which then contribute to the estimates in Appendix I. To replicate BLM's outputs, Mr. Blomstrom needed to use the complete tree list data in T01 (AR_01490_AR_02137), as it includes relevant data about smaller non-merchantable trees, which would have produced estimates more closely consistent with those BLM included in Appendix I. Mr. Blomstrom does not attest to any familiarity with any categories of BLM tree lists. His unfamiliarity with the appropriate tree list

---

[1] The metrics reported by BLM in Appendix I are based on trees greater than 4.5 feet tall in 2021. Note that when BLM grows trees forward to a common year, as it did for Appendix I in the EA, smaller trees originally documented in the field as less than 4.5 feet in height may exceed 4.5 feet, thereby impacting the calculation of stand metrics.

Page 4     Declaration of Abraham Wheeler

to input into FVS-ORGANON infected and invalidated his entire analysis, because he started with the wrong input data.

7. As shown in paragraph 24 of his declaration, Mr. Blomstrom was aware of and had access to BLM's complete tree list data in T01 (AR_01490_AR_02137), but chose not to use it to run his modeling. In paragraph 25, Mr. Blomstrom states that he "specifically reviewed and confirmed" that the total tree plot data in T01 "equates exactly" to the T07 Merchantable Tree Plot Summary. But this statement is 100% wrong. The total tree plot data at T01 is more complete than the merchantable plot data in T07 because it includes information about smaller trees that contribute significantly to stand metrics especially when grown forward to a common year, as BLM in the EA explained that it did. And as I explain below, T01 includes an important factor related to plot shape (half or full) that is not included in T07; a factor that one must consider in properly calculating metrics based on the stand exam data. Mr. Blomstrom does not explain how he could have determined that these two different lists equate exactly to one another.

8. There is another serious problem with Mr. Blomstrom's analysis. He failed to mathematically transform tree counts from half plots into full plots to ensure that the plot data was representative of stand conditions. He states in paragraph 18 of his declaration that stand 31576 (T-R-S 23-6-35E)

Page 5     Declaration of Abraham Wheeler

contains 5 plots and 28 trees, that his hand calculation of the average trees per plot was 5.6, and that average basal area was 112 square feet per acre, not the 229 square foot estimate reported by BLM in Appendix I. But what Mr. Blomstrom failed to account for is that 4 out of 5 of those plots are half plots. See AR_01720-23 (showing that 4 of 5 plots for stand 31576 are half plots). Half plots are a commonly used tool in BLM forest inventory. They are typically necessary when a plot is situated close to the boundary of a forest stand such that a significant portion of the measurement plot falls outside of the stand being measured, or to improve sampling efficiency. To compensate for this, each tree in a half plot list is counted twice when averaged into the overall stand data. The shape of 4 of the 5 plots in stand 31576 are categorized as "half" in the T01 complete tree list, which Mr. Blomstrom apparently disregarded or did not understand given his lack of familiarity with BLM forest data listing. Therefore, the actual tree count for stand 31576 is 49 (when accounting for half plots), which puts the average trees per plot at 9.8; this puts the basal area at 196 square feet at the time of measurement in 2009, much closer to the 229 square foot value BLM reported for that stand in Appendix I. The remainder of the difference is explained in paragraphs below (i.e., growing to a common year, and compounding effects of the errors).  Additionally, 3 of the 6 plots in stand number 31530 that Mr. Blomstrom references in paragraph 19 are half plots, showing that hand

Page 6        Declaration of Abraham Wheeler

calculating plot averages is not as easy as he thought, and also showing that the calculations he made do not support the strongly worded conclusions in his declaration.

9. Mr. Blomstrom also made a critical error in his analysis by failing to recognize that BLM grew all stands to common year 2021 to reference current conditions. Page 18 of the Blue and Gold EA (AR_00369) explains that "**All stands were grown to common year 2021 to reference current conditions**." (Emphasis added). BLM collected the individual plot data for the Blue and Gold project between 2006 and 2020 (See the top of each summary unit page in T01 for exact dates), contrary to the statement Mr. Blomstrom makes in paragraph 12 of his declaration. BLM input the data into the modeling software and grew all trees to a common year of 2021, before populating summary data into Appendix I of the EA to represent current conditions. Plaintiffs quote BLM's common-year EA disclosure on page 6 of their Proposed Supplemental Brief (ECF-51-1, p. 7), but Mr. Blomstrom states in paragraph 18 of his declaration that he assumed the data had not been grown forward to a common year. Based on my experience with forest modeling, I have observed that stands tend to increase timber volume each year as they grow, with annual increases of generally between three and eight percent per year. Other metrics change over time as well (e.g., basal area, stand density index, canopy cover). Because Mr.

Page 7     Declaration of Abraham Wheeler

Blomstrom failed to match BLM's modeling methods and grow initial tree data to the common year of 2021, Mr. Blomstrom's analysis is defective and does not undermine the data shown in in Appendix I.

10. Lastly, Mr. Blomstrom does not appear to recognize that calibration of FVS software is a common practice among silviculturists and forest modelers.[2] Calibration is particularly important with estimates of canopy cover. Canopy cover is the percentage of the ground area that is directly covered with tree crowns, and it is impacted by the spatial distribution of those trees and the conditions of their crowns that aren't directly measured (e.g., how much the crowns do, or do not overlap). Calibration regarding canopy cover is technical. Trees do not grow randomly in western Oregon forest settings and calibration is advised in the published FVS instruction manual and peer reviewed literature.[3] In Paragraph 17, Mr.

---

[2] See https://www.fs.usda.gov/sites/default/files/guidelines-for-calibrating-forest-vegetation-simulator.pdf (last visited March 2, 2026).

[3] Calibration of canopy cover has been a well understood practice amongst forest modelers for nearly 30 years. See https://research.fs.usda.gov/treesearch/6261 (last visited March 2, 2026).

In FVS, the "default assumption of a random spatial distribution . . . has been observed to produce biased estimates of [Percent Canopy Cover] when trees are from stands with non-random spatial distributions (e.g., clumped or uniform)." https://www.srs.fs.usda.gov/pubs/gtr/gtr_srs224.pdf (page 57) (last visited March 2, 2026).

The FVS handbook explains on p. 78, "The default value of -.01 used for the overlap correction factor in equation {4.3.2.2.2} represents a random distribution of trees. **For tree distributions other than random,** the value of the overlap correction factor can be changed using the CCADJ keyword" (emphasis added). https://www.fs.usda.gov/sites/default/files/forest-management/essential-fvs.pdf (last visited March 2, 2026).

Page 8      Declaration of Abraham Wheeler

Blomstrom compares his own estimates of 68% and 57% canopy cover to the BLM's estimates of 90% and 94% respectively on different sampled forest stands. Mr. Blomstrom appears to have used FVS-ORGANON's default random tree distribution setting without variation. To validate his conclusions, Mr. Blomstrom should have run various scenarios of canopy cover based on different spatial arrangements of trees, including trees less than merchantable size, in order to estimate an acceptable range of values, if field reconnaissance was not an option for him. As such, the disparity in canopy cover estimates does not represent a failing on the part of the BLM and the professional expertise of its silviculturists, but on Mr. Blomstrom's narrow methodology that did not include running various scenarios of canopy cover or field confirmation of conditions.

11. Each of Mr. Blomstrom's preceding errors by itself would lead to differences in calculations of forest metrics when compared to the data that BLM provided in Appendix I of the EA. But in some cases, Mr. Blomstrom's errors compound upon one another. For example, by relying on tree list raw data for only merchantable trees (excluding trees less than 7 inches diameter

---

"Estimates based on simple crown width equations adjusted for tree social position and caps on maximum cover, had the lowest error . . . of crown width approaches across all vegetation types. Random crown overlap applied to unadjusted crown area only performed well in drier forest types and was unable to match high line intercept cover levels (>90%) often found in productive forest types." https://www.sciencedirect.com/science/article/abs/pii/S0378112721007726?via%3Dihub (last visited March 2, 2026).

Page 9          Declaration of Abraham Wheeler

at breast height) AND failing to grow the trees to a common year, smaller trees are not allowed to graduate into larger size classes as their growth is modeled over time, which would produce even greater differences between relevant forest metrics. Further, because Mr. Blomstrom did not ensure that half plots are properly accounted for and failed to understand the calibration factors that are necessary in FVS Organon, there is no way his stand metrics would be correct and match those provided by BLM.  The strongly worded conclusions Mr. Blomstrom makes, aimed at technical forestry experts on BLM's staff, are simply not supported by the facts.

      I declare under penalty of perjury that the foregoing is true and correct. Executed on March 3rd, 2026, in Salem, Oregon.

ABRAHAM WHEELER
Digitally signed by ABRAHAM WHEELER
Date: 2026.03.03 09:03:48 -08'00'
_____
Abraham Wheeler